# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TRANS UNION LLC, | ) | |
| | ) | Case No. 26-cv-00460 |
| Movant, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| LYNLI WHITNEY, | ) | Underlying Action Pending in M.D.N.C. |
| | ) | |
| Plaintiff & Respondent. | ) | Case No. 1:25-cv-00855-TDS-LPA |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion filed by Trans Union LLC ("Trans Union"), seeking to quash a third-party subpoena. This order concerns a discovery dispute related to litigation between Plaintiff / Respondent Lynli Whitney and Defendant National Credit Systems, Inc. ("NCS"), which is currently pending in the Middle District of North Carolina, case no. 25-cv-00855. In brief, Ms. Whitney alleges that NCS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(8), by reporting false information about a debt to Trans Union. Ms. Whitney served a third-party subpoena on Trans Union, requesting certain documentation. Trans Union objected but produced responsive documents. Then, on December 17, 2025, Plaintiff served a second subpoena on Trans Union, seeking to have a representative of the company sit for a deposition. Trans Union again objected and this time refused to comply with the subpoena as formulated. Subsequent discussions between the parties resulted in Ms. Whitney offering to limit the scope of the subpoena in certain ways. However, Trans Union found these limitations insufficient and filed the instant motion before this Court to quash the deposition subpoena. For the reasons given below, the Court grants the motion in part, denies it in part, and denies Trans Union's request that Ms. Whitney pay its legal expenses.

## DISCUSSION

Trans Union argues that the subpoena, even after Ms. Whitney's offered limitations, should be quashed because it is unduly burdensome. *See generally* dkt. 1 [hereinafter Mot.]. To succeed on its motion, Trans Union must prove that "the burden of compliance… would exceed the benefit of production of the material[.]" *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004); *see* Fed. R. Civ. P 45(d)(3). Ms. Whitney has helpfully sorted the categories of information sought into four categories, an organizational schema that Trans Union appears to have adopted in its reply brief, *see* dkt. 7 at *3–6 [hereinafter Reply], and which the Court will also adopt for its analysis (albeit in different order than presented by Ms. Whitney).[1]

Ms. Whitney first seeks information about Trans Union's reliance on NCS's contractual promises that it would provide accurate information to Trans Union. Dkt. 6 at *10 [hereinafter Resp.]. Ms. Whitney argues that she needs this information to rebut NCS's asserted affirmative defense that her alleged injuries stem entirely from the actions of third parties (such as Trans Union), and not from any actions taken by NCS. *Id.* Trans Union opposes this request, arguing that the information it seeks is utterly irrelevant to Ms. Whitney's cause of action. Reply *3–4. The Court agrees. The Seventh Circuit has held that the act of providing false information to a credit reporting agency—including a failure to note that a particular debt has been disputed—constitutes a violation of the FDCPA. *Wood v. Sec. Credit Servs.*, LLC, 126 F.4th 1303, 1310 (7th Cir. 2025), *reh'g denied*, No. 23-2071, 2025 WL 462078 (7th Cir. Feb. 11, 2025). Here, if NCS reported information to Trans Union that NCS knew or should have known was false or disputed, then NCS injured Ms. Whitney. Information about whether Trans Union acted in reliance on contractual assurances of accurate information from NCS has nothing to do with whether NCS violated the statute. The information sought therefore has no

---

[1] As an initial matter, the Court notes that the briefs filed by both parties contain multiple aggravating compositional errors. However, based on the nature of the errors, the Court does not suspect that they stem from improper use of AI composition tools.

probative value for Ms. Whitney's cause of action, *see* Fed. R. Evid. 402, and as such the burden of producing it will necessarily outweigh the benefit, *see Nw. Mem'l Hosp.*, 362 F.3d at 927. This aspect of the subpoena is unduly burdensome and must be quashed.

Second, Ms. Whitney seeks information from Trans Union about the number of disputes related to NCU reports that Trans Union has received from all customers. Resp. *10–11. She argues that this information is needed to rebut NCS's argument that it employs significant vetting procedures to ensure that false information is not reported. *Id.* Trans Union responds that when it "receives a consumer dispute about information it is reporting, it is required to contact the furnisher of information [*e.g.*, NCS] about the dispute." Reply *4. As such, Trans Union should have already notified NCS about all disputes related to NCS reporting, which means that NCS itself can testify about this matter, as well as about the disputes it has received from other reporting agencies besides Trans Union. As courts in this district have repeatedly held, it is unduly burdensome to demand information of a third party when that information could also be discovered from the plaintiff or defendant. *See Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (Cole, J.) (collecting cases). Here, there does not appear to be any indication that Ms. Whitney has already asked NCS to provide this information. While she does point to a dispute she filed with Trans Union that was not provided to NCS, Trans Union credibly argues that the reason why the "dispute" was not provided to NCS is that the disputed debt did not actually appear on the report in question. Reply *5; *see* dkt. 7-1. Because there is no indication that Ms. Whitney has already sought to obtain this information from NCS, it is unduly burdensome to request that Trans Union produce a deponent to testify about it.

Third, Ms. Whitney wants Trans Union to testify concerning an Automated Consumer Dispute Verification form that NCS should have in its possession, but apparently does not. Resp. *3. Trans Union provided the form to NCS after Ms. Whitney raised a dispute with Trans Union

– 3 –

concerning information that Trans Union received from NCS. *Id.* at *7–8; Reply *5. Although NCS apparently does not have a copy of the form, Trans Union did keep a copy, and it has produced the form to Ms. Whitney. *Id.* Having produced the document, Trans Union argues that there is no value in having its representative testify about the contents when he or she could only speculate about how NCS understood the document. A representative from NCS can also testify about the document, and they would produce far more probative testimony than could Trans Union. Here again, the Court finds that Ms. Whitney has not done her due diligence in first seeking relevant information from the actual defendant, NCS. As such, this aspect of the subpoena must also be quashed.

Finally, Ms. Whitney wishes for Trans Union to testify concerning consumer reports that Trans Union provided to other companies (such as Chase Bank) that may have contained the allegedly false information from NCS. Resp. *8–9. Trans Union responds that it has already informed Ms. Whitney that it does not keep copies of such consumer reports after they have been made, and that a Trans Union deponent could only speculate as to their content if required to testify. Reply *3. The Court agrees with this response. However, Trans Union avoids part of Ms. Whitney's argument, and there it runs into trouble. Ms. Whitney states that she is seeking to discover information about "the time, date, . . . and recipient of any consumer reports that [Trans Union] issued and what information would have been in Trans Union's file for Ms. Whitney at that time it issued that report." Resp. *9 (internal quotations omitted; ellipsis in original). In other words, she is seeking logs of the reports, or what might be called the metadata of the reports, rather than their content, as well as testimony about the likelihood that the reports contained the allegedly false information from NCS. *Id.* Unlike the categories above, this information is neither irrelevant nor possessed by NCS. The Court agrees that holding a *deposition* solely for questions related to this topic would not be a good use of anyone's time. However, a short *declaration* containing a list of all such reports known to have been generated, and describing the generation procedures, would be probative in the underlying matter and not unduly

– 4 –

burdensome for Trans Union. (Indeed, it appears that Trans Union has, at times, offered to make a declaration along similar lines. Mot. *4; Reply *6, 7.)

Under Federal Rule of Civil Procedure 54(d)(3)(A), this Court has the power both to quash and to modify unduly burdensome subpoenas. With respect to Ms. Whitney's request for deposition testimony concerning consumer reports issued by Trans Union, the Court finds it appropriate to modify the subpoena to only request a declaration. If Ms. Whitney wishes, she may reformulate the declaration topics in light of the changed format. However, the Court cautions Ms. Whitney that any such reformulation should not extend the declaration topics into the areas quashed in this order.

Finally, given that the Court has granted Trans Union's motion only in part, it denies Trans Union's request that Ms. Whitney be made to pay its legal expenses.

## CONCLUSION

The Court grants in part and denies in part Trans Union's motion to quash Ms. Whitney's subpoena [1]. The subpoena is quashed to the extent that it seeks to compel a deposition on any subject; however, the subpoena is also modified to permit a declaration from Trans Union on the general subject of the consumer reports it has previously generated concerning Ms. Whitney. The topics of the declaration may be reformulated in light of the changed discovery format. However, any such reformulation should not extend the declaration topics into the areas quashed in this order. Finally, the Court denies Trans Union's request that Ms. Whitney be forced to pay its legal expenses.

**IT IS SO ORDERED.**

Date: 4/21/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge